Next case called is number 123092, People v. Witherspoon, agenda number 10. Council, you may proceed. And welcome back. Thank you. Good afternoon, your honors. I'm Assistant Attorney General Heldman here today on behalf of the appellant, the case, the appellate court reversed defendants conviction for home invasion, finding that defendant had entered the victim's house with authority. But for two reasons, this court should reverse. One, as a condition of pretrial release for a another battery charge, defendant was prohibited from entering the residence. And so because of that, his entry was without authority. And second, under the limited authority doctrine, any authority defendant might have had from the perceived invitation from the victim to come back and return her keys and phone, which he took, was limited, and he when he entered the home in the middle of the night and battered her. Turning to the first basis for reversal. Once again, we are called upon to interpret a statute in this case, interpret the term authority. The cardinal rule is to ascertain and effectuate the legislative intent. And the best indicator is the language used. In this case, we're dealing with the official right or permission to act. Now, in this case, we have an official court document, the bond release order, which made clear that the defendant was not allowed to was not authorized to enter the residence is also not authorized to have contact with the victim. And it's really a simple case of this claim, meaning the official right or permission to the fact that there was an official court document prohibiting this action. And his action in contravention of this authority was without authority and the courts reversed reverse on that basis. Defendants asserts that the court should ignore this claim meeting for two reasons. One, defendant argues that the must have been some sort of invasion. But that's not right. For one thing, the court delineated the elements of home invasion, and it didn't require a literal invasion necessarily, but delineated, delineated those elements and the without authority. Moreover, even under defendants definition of invasion, which is a hostile or forceful encroachment on the was satisfied. So there had to be an invasion. There was further subsection D shows that a court the legislature intended that when a court order prevents a defendant from entering, even if that defendant had a tendency interest in the residence that the entry subjects the defendant to home invasion. Now, that goes to the second basis for defendant asserts this court should ignore the authority, which is legislative intent. The legislative intent actually only reaffirms that the plain language should be applied. This court has stated on multiple occasions that the purpose of home invasion is to protect the safety of persons in their homes. Now, of course, bears repeating that in this case, the defendant was found legally too dangerous to enter the defendant's home. And sure enough, upon subsequent entry, proceeded to batter the victim again. So it's clear that the purpose of the statute of protection of people in their homes is only enhanced by applying the plain meaning of correct that the testimony was that the defendant came to the woman's home and that and then left taking her phone and her wallet. And she said something to the effect she knew he would bring them back the phone. And then he came back a second time where she was asleep and she woke up and he was standing over her and she said, beat her, correct? Exactly. Now, in the first instance, was there any testimony about whether or not when he entered that she gave him permission to enter? Yes, there's explicit testimony that she did not give him permission to enter. She says, she testified that he knocked on the door and he barged in without permission, yelling at her about a Facebook post that she had made. And so there's an explicit testimony on her part that she did not grant permission on his initial visit to enter. And then the second one, she testified she was asleep and he was standing there. Exactly. So she woke up at approximately 2.30 in the morning and he was standing next to her bed, standing briefly before he proceeded to bat at her. And the trial court somehow found that there was consent? Well, the trial court accepted her testimony as true. And yes, the trial court found that this was an invitation to return her keys. So she testified, he took my keys, he took my phone. He came in without her permission, yelled at her, whatever, took her property and left. And then exactly. And then they, so she was asked, did you consider calling the police? And she testified, well, I thought about it, but I couldn't because I didn't have my phone. And then, but I knew he would bring them back eventually. I knew he would bring them back. I didn't worry essentially about my phone or my keys. I knew he would bring them back. And then she proceeded to lock the door and go to sleep, or at some point in between the And yes, there was, the trial courts seem to think that this was an invitation to return in some fashion. But this brings us to the second basis of reversal, which is the limited authority doctrine. So even if the, after the trial court said that this testimony is true, there's some kind of implied invitation to return these items that were taken. There's certainly no invitation to come in in the middle of the night without knocking, which is contrary to standard practice, and then batter her. And so under the limited authority doctrine, when you invite someone into your home, that's you're only granting them limited authority to enter with the intent to, to engage in criminal conduct that exceeds that authority. And so here, even accepting is true, that there's some kind of invitation to enter, that authority was exceeded, vastly exceeded. And so that provides a second basis for reversal. So again, there's the plain language of the that as long as we have had a plain meaning of authority, the defendant cannot have had authority to enter in contravention of the superior legal authority of his bond release. And second, that under the limited authority doctrine, any, any authority granted by this invitation, after the trial court accepted as true, her testimony was exceeded. But isn't the question then, can consent negate a court order? That's right. Well, that is, that's the ultimate question. The question is, what did the, what did the legislature mean when they wrote without authority? And that's the first question. They're, again, applying just the plain language that is, applying the plain language means that that means no, that simple consent cannot, cannot override a superior legal authority. Because wouldn't that undermine then the authority of courts? If consent can negate what the court order says? Basically, it would undermine the authority of the courts. Absolutely, Your Honor. It would undermine the authority of the courts, it would, it would greatly harm the value of the legislative, the statutes which the legislature has enacted to prevent domestic violence. There are all kinds of consequences that would result if the homeowner or any residents can, by some sort of oral consent, override the law. There are all kinds of situations which could lead to potential dangers. What if there are multiple residents of the house? Could any resident then permit a oral consent of a resident? Any resident, even if that resident was not the victim in the underlying battery that led to the bomb condition order? What if there was a easily influenced minor who could be convinced to consent to the entry? And also, one of the key reasons why we have these kinds of orders, the legislature has found, is that these type of relationships, often that familiarity and accessibility are mechanisms, are ways by which the perpetrator is able to get back into the life or to the home. And it would certainly go against legislative intent to permit a, someone subject to a bomb release order to then go to the home and try to pressure the victim into consenting or providing some kind of oral or peer-to-peer consent. Is this an issue of statutory interpretation, or is this a factual dispute in each case of what happened, what kind of permission was given? Well, it's a statutory construction case, Your Honor. If we find, if this court finds, that regardless of what happened, there couldn't have been the official right to enter because of the court order. And that's the end of the matter. It simply doesn't, regardless of what testimony there was about this verbal consent, that would be rendered irrelevant. So unless the court has any further questions, we would ask this court to reverse the judgment of the appellate court. Thank you. And Ms. Rivers, I want to welcome you too. I welcomed him back because he was here this morning. Oh, thank you. Well, good afternoon, Counsel, Your Honors. Aiden River on behalf of Marcellus Witherspoon from the Office of the State Appellate Defender. Ms. Rivers? Yes. I'll go over here. I'm troubled. I'm troubled. And if you can hear me out on my trouble, maybe it'll, you can weave it through your argument. But I think it's fair that I let you know. I'm troubled by the fact that the authority in this case was given by defendant's alleged domestic abuse victim, whose residence was the subject of a no contact order entered because of defendant's abuse. And my question really is, to what extent can we trust that an invitation extended by a victim toward her abuser, when that abuser shows up on her doorstep in flagrant violation of a court order, is in fact voluntary, that it's voluntary consent? I'm just not sure that the power, I think the power dynamics rather are so uncertain in such cases, that I'd like to know how we can trust the validity of any authority, so called authority that was given. And should this court be wary of setting a precedent stating that permission under such circumstances, insulates the abuser from a charge of home invasion, should he gain entry, and once again, harm the victim? I'm troubled. I just, I, let me see if I can address that. Pull that microphone a little closer to center. Thank you. First of all, the state had an appeal of factual finding. The court here heard the testimony. They had a complicated relationship. She'd contacted with him later. The court believed that by her saying, he's going to bring my stuff back, that she impliedly consented. So, I mean, you agree, she never testified. I gave him permission to enter my home the second time. She did not use those words. She said, he came in without my authority. I told him to leave. He took my phone, he took my wallet. The police, I didn't call the police because I didn't have a phone. But I figured at least I could get my phone and my wallet back. And that was consent. That's what the court found, yes. So, she, the state is ignoring, is that the resident here had property right to decide who can come in, and she had the right to make a bad decision. There's a false analysis here that's raising concerns about undermining the authority of the courts, because she was not a party to this order. This is a bail bond order. There was nothing. That's all part of the legal argument. Should we have the ability to take into account whether in this type of situation with a domestic abuse victim, whether she can, with that dynamic that I'm talking about, I mean, even if we're to consent trumps the court order, can we take a look at the dynamic of the situation and say that's no consent at all? Well, this is a statutory interpretation issue. So, the circumstances are different from case to case. And you have to decide whether authority includes the consent of the person, whether they are in an abusive relationship or not. I don't view it as a matter of trumping it or superseding it or overriding it. It's separate, separate spheres. She has the right, as a property owner, to decide who comes onto her property. There's a bail bond order that she's not a party to. No court has directed her not to let this man in. If he violates that order, then he can be prosecuted for doing so. And he can be prosecuted for the battery that occurred after he did. If there was no question, no factual question, and there was just no consent given, right? No consent given, then there's a court order, right? So, there is no authority if there was no consent. Now, your position would be that there was consent, right? If there was, you wouldn't even have to get to the order, because if there was no consent, and he entered in the middle night, then he was entered without authority. Exactly. Can this court take, again, going back to this dynamic, create a presumption that in these situations, consent isn't voluntary. A domestic abuse person who's been abused, now we've got a court order saying he can't go back. Can this court take a look at it and have a presumption that in those cases, that her consent is never voluntary? I don't think you can presume that, because each case is going to be different. Well, how about this? Well, let's just take this. Well, the court found that... Abused, court order, no contact, back in, more abuse. The court found that she fully consented to have him come in. She had contact with him later. She had contact with him later when he, she woke up and he was standing over her, beating her. No, I was talking about when he was in jail, she talked to him on the phone. She sent him money. She said she still loved him. You know, the court heard all this. And I think if you make an exception for authority based on the type of victim involved, then you're changing the statute. That's something the legislature could do. If they were to make an exception for that kind of situation, but here we're faced with, without authority, we have, and that's in the context of a statute that is for home invasion, which involves an unwanted intrusion into the home. Her consent doesn't override the order. There's no effect. There's no undermining of the court authority. That was her decision. I will also briefly mention the definition of dwelling place of another because the state relies on that. That has nothing to do with this issue here. All the legislature did there was take away the defense of, this is my home. The only, you could still have the defense of, she let me in. So that is irrelevant. The appellate court noted that. To beat a dead horse, make it more dead. What if the consent is given because it's less dangerous to let him in than it is to send him away? Is that valid consent? She's, yeah, she's, you know, you could argue that's a bad decision, but that was her decision. She could have gone to a neighbor's house and called the police, which, you know, I'm just going to bed and that's what she decided to do. Well, you made the comment a couple times, we have to think about the facts of the case. And this is the case that's before us. And I worry about the precedent that it was set for other cases with abuse victims. And I mean, this, this is probably a good case to address whether or not that can be in these situations. She's been abused previously. There's a factual finding the court made. I mean, that's inherent in its finding that there was consent there that it was voluntary. If the court believed that she didn't truly consent to him coming back, it would have convicted him based on the traditional form of home invasion for lacking consent. But the only basis for quitting, or I'm sorry, for convicting him of home invasion was based on the existence of his bail bond order. And I just want to get to the limited authority doctrine argument. First of all, this is forfeited with deperation in the PLA. And I don't understand the state argument because the court clearly made the finding that it did not believe that consent to batter when he entered. So there's no, there's no violation of limited authority doctrine here. The whole ruling is attached to the appendix to the state's brief A-11. You can find it. He said, I'm not convinced beyond a reasonable doubt he had this intent. So limited authority is not a basis here to overrule or reverse the appellate court. And as far as the property rights, and how that interplays with the order, I cited Oregon case, which I think is very persuasive, it recognizes property law rights, and that those are unaffected by a court order to which you are not a party. The state cites some other out of cases, but they don't discuss that property law. So this Hall case is fairly close on point. Counsel, getting back to Justice Thomas's issues, if that's the case, if a couple, married couple, both on the property, had a court order, the woman got a court order to keep him off the property, you're saying that he still can go on? If she gives, if she gives the consent. Yeah. I don't even know. So the consent is actually, and I won't use this word, that others have used, but negates the order, the court order. Basically, court orders don't count that. So what's the point? I don't think it's negating the order. So every battery case then will end up, if it's a domestic violence case, that couples are living together, and there's property rights involved in every case, they can go on anyway. So what's the point of the court order? If she consents, she's not negating the order, unless that order says, directs her not to let this guy in, there is no order to, she's not negating any order. He can, she's not making lawful his violation of that order. He can still be prosecuted for violating that order. But a condition preceding this is that he entered without consent. And he violated, he violated that order. And here they prosecuted for him and they ended up dropping that count. I don't know why. Procedurally, though, would the person who received the protective order have to go back into court to have it dissolved before that person can actually come onto the property? Yes, you could seek to do that if you didn't want the protection of it anymore. But what I'm just saying that if that person nevertheless decides in some instance to consent, maybe it's some kind of semi-emergency and he's there, you know, come on in. I argue that person should not be convicted of home invasion because there's not an unwanted intrusion. He should not be convicted of a class sex felony if he is allowed to come in. And it's a separate issue that whether he violated that order, it should have nothing to do with whether he lacked authority and committed the class sex felony. Could a mentally ill person come in the door, give consent? Would that be consent? You said other fact patterns. I'm giving you one. Yeah. OK, I'm thinking about it. I guess it would depend on if the person entering knew that the person couldn't give consent. I mean, the obvious point, right, is that I think it's an interesting question, isn't it? Yeah. To grapple with whether a domestic abuse victim, codependency issues, fear issues, can that person give consent? I think that would be something that would have to be litigated in a particular case. I don't think we can make a presumption that all these Here we are. What? Here we are. Well, it wasn't litigated and there was no, the court found that it was proper consent. We have that factual finding. The state can't appeal. It's, there's double jeopardy principles here, obviously. We're stuck with that. We're stuck with that finding. Well, counsel, on that point, in the reply brief by the people, it's towards the end of the reply brief, they make the argument that the judge did not make that finding and that the record site that you pointed to, I think that there wasn't, that page didn't. I know in the bond, he was referring to the find, he was that the defendant had the intent to batter when he entered, that's what they were referring to. And that isn't, that's incorrect. There was a typo, but it's in the ruling. You have it in the record, obviously, and attached to the briefs, but the court said, I can't find beyond a reasonable doubt that he had the intent to batter her when he entered. So that, that, I believe that's what you're referring to. Well, I guess what I'm getting at is, do we, is it clear in the record that the judge did or didn't make a finding that the homeowner gave consent, gave authority? Yes, it is very clear because the court asked for, he made, he made that finding that, that, that through her testimony, that he knew, she knew that he would bring the belongings back, that she was impliedly consenting to him to return. And then he asked for briefing on this issue about what, just on whether, by virtue of this bail bond order, that therefore he committed home invasion. That, so that was the only basis for the court to find him guilty of, of, of home invasion. And I'm curious, is this Judge Griffith, was that the same judge that established the original bond prohibition on not entering? I think it was even going to come near the residence. Was it the same judge? Yeah. Uh, I don't recall that. Well, I'm just curious. There's a, I know there's a copy in one of the briefs. Um. Well, the other question is this, it was just a bond condition. It wasn't an order of protection as a, or it was an order of protection. It was not an order of protection. No, it was just a bail bond condition. Um, it's, it's in the, the copy of it is in the appendix. I don't see. Well, I don't want to hang you up. Yeah, I know. I can't even read, I can't even read what this, if this is the judges, I don't see the judges name on here. But in this case, the trial judge found the bond condition overruled any possibility of consent and convicted the defendant of homicide. Well, it found, he found that therefore he lacked authority. He did find that she consented, but it found that, um, that trumped her consent. And my argument is that that is, um, incorrect. And then the appellate court reversed based on plain language, but based on, on the Oregon appellate court case. Is that correct? It found that persuasive. It was a, um, similar, similar circumstances. It was a trespass case. There was an order, uh, as a condition of release, uh, that he not, uh, contact, um, uh, the victim. And the court says that she wasn't a party to it. So it could have no effect on her right as a, um, property or resident, like if she's an owner or tenant, um, and it found that persuasive and there was a theme of the person's, uh, sovereignty in his own home. And, uh, you have the right to decide whether somebody can come into your home or not. Is that, is there any Illinois precedent on that? No, but that's, I mean, I found that case in my research in the Thank you. No other questions as you affirm the appellate court. Thank you very much. Thank you. Reply. Good afternoon, your honors. Um, I'll try and make just a three quick points. Um, and reply first, uh, just to clarify with respect to the actual finding, uh, to make sure we were on the same page. The actual finding is just the testimony that the victim hit. So the factual finding is simply, she stated, I knew he'd be back. All right. He took my keys, um, and my phone. Uh, but I knew he would bring them back eventually. So that's the limit of the sort of factual finding that the court made. And so then the legal implication of that is a whole separate issue. Whether, uh, what, what legal effects that might've had is a separate issue. That's the factual finding. Simply the defendant testified, I mean, the victim testified as such, and the court accepted that as true. Um, now second, uh, turning to the, the issue that the court has asked whether it can presume that, uh, the consent was, uh, not voluntary, involuntary, given under certain circumstances. Um, but, uh, perhaps luckily for the court, the court doesn't have to make that presumption because the legislature has, by the plain language of the court, already dictated what, what the answer is and the legislature has done so by using the word authority. Certainly the legislature, the legislature could have said, uh, home invasion applies if the defendant enters without the consent of a homeowner or resident, but the defendant, the legislature didn't, didn't write that. The legislature wrote that the defendant enters without authority and authority again is the official rightful permission. And there can be no such official right or permission to engage in unlawful behavior. The entry was unlawful. The defendant even concedes that it was a violation of the bail condition, it was unlawful behavior. And the homeowner, the resident simply cannot authorize, cannot provide official permission to conduct unlawful behavior. It is true that this, uh, the Oregon, uh, appellate court involved, uh, so that under Oregon law that the consent of the homeowner, uh, is, uh, what matters there, of course, first of all, um, it was a plain Oregon law, uh, which is written a little differently, but second, as we've been on the brief, that's a minority decision. And so we have cases from the Washington courts and from the New York courts, which find similar circumstances that a homeowner or resident cannot authorize, uh, such conduct, cannot authorize legal conduct. And it simply doesn't matter. So the Washington cases such as Sanchez that we say, um, in the New York cases, and in that case, they said the language there is, can, is whether the, uh, the defendant had a license or privilege and, and the court makes the correct analysis, uh, in that case that there cannot be a license or privilege given for unlawful conduct. And so the, this court need not make such a presumption because the legislature has already, uh, made that determination, uh, um, so unless there are, uh, additional questions, we would ask the court to reverse the appellate procedure. Thank you. Case number one, two, three, zero nine two will be taken under advice of people versus with us. Agenda number Mr. Malamute, Mr. River, thank you for your arguments today. Thank you.